AO 91 (Rev. 11/11) Criminal Complaint

FILED

AUG 3 0 2017

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___BC___ DEP CLK

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>Joseph Anthony Vaught<br><br>_Defendant(s)_ | ) ) ) Case No. 7:17-mj-1231-RJ ) ) ) ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  August 29, 2017  in the county of  Brunswick  in the
 Eastern  District of  North Carolina , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Possession of Firearm by a Convicted Felon |
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute and distribution of a quantity of heroin, a schedule I controlled substance |

This criminal complaint is based on these facts:

See Attachment A

☑ Continued on the attached sheet.

_____
Complainant's signature

Task Force Officer Robert Simpson
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 8/30/2017   08/20/2017

City and state: Wilmington, NC  ~~Raleigh, NC~~

_____
Judge's signature

Robert B. Jones, Jr., USMJ
_Printed name and title_

Case 7:17-cr-00105-D   Document 1   Filed 08/30/17   Page 1 of 5

United States v. Joseph Vaught – Attachment A

Affidavit

I, Robert Simpson, Task Force Officer, United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, depose and state that:

I am a Task Force Officer of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and employed by the Wilmington Police Department. I have been so employed for approximately 11 years, and have participated in numerous investigations relating to explosives, firearms and illegal narcotics violations. I have received training, both formal and informal, in the investigation of complex investigations, firearms offenses, and undercover investigations.

I am familiar with the facts and circumstances of this investigation. This affidavit does not include all of the facts known to me regarding this investigation, only those sufficient to establish probable cause that federal laws have been violated. Specifically, this affidavit is submitted for the limited purpose of establishing probable cause that Joseph Anthony VAUGHT, also known as "Gotti," committed the following crimes in the Eastern District of North Carolina: (i) on July 11, 2017, VAUGHT possessed with intent to distribute and did distribute a quantity of heroin, a schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); and (ii) on August 29, 2017, VAUGHT, having been convicted of a crime punishable by imprisonment exceeding one year, knowingly did possess in and affecting commerce, a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

This affidavit submits facts involving an ATF criminal informant ("ATF CI"). The ATF CI has been documented with ATF for approximately one and a half years and during such time has participated in multiple undercover operations. The ATF CI's past information has been corroborated through audio, video, and other means and has been found to be reliable.

1. In late December 2017, TFO Simpson received information from the ATF CI regarding a local gang leader named Victor Dorm. The ATF CI had met Dorm while they were both incarcerated in state prison and knew him to be a violent high-ranking member of the Bloods street gang. The ATF CI stated he could purchase narcotics and firearms from Dorm and other Bloods members from Dorm's gang set. TFO Simpson knew Dorm to be involved with violent criminal activity to include armed robberies/home invasions resulting in shootings and homicides. TFO Simpson knows Dorm is currently a suspect in at least two open homicide cases in the city of Wilmington, North Carolina.

2. On June 4, 2017, the ATF CI met with Dorm inside an ATF undercover apartment ("ATF Apartment") that was equipped with audio/video recording devices. All meetings in the ATF Apartment were video and audiotaped. Dorm, with a subject later identified as James Flowers, arrived at the ATF Apartment with the intent to cook powder cocaine into crack cocaine. As such, Dorm brought a quantity of powder cocaine and other items commonly



AUSA 1

used to manufacture powder cocaine into "crack" cocaine. This crack cocaine cook was spontaneous and not anticipated by the ATF CI or law enforcement.

3. During Dorm's and Flower's visit to the ATF Apartment, the ATF CI spoke with Dorm asking if he would be willing to participate in a robbery of drug traffickers. The ATF CI explained that he knew individuals – actually undercover agents – who had access to a fictional stash house. Dorm stated he was more than willing to assist in the robbery and agreed to meet with undercover agents to get further details.

4. On June 5, 2017, an ATF Special Agent, operating in an undercover capacity ("U/C Agent-1") and the ATF CI met with Dorm about participating as part of a crew to rob multiple kilograms of powder cocaine owned by a Mexican cartel supplier. U/C Agent-1 informed Dorm of an associate that was portrayed as moving such powder cocaine. U/C Agent-1 then called a second undercover agent ("U/C Agent-2") and had a conference call during which Dorm was introduced and the drug robbery was discussed. After the conference call, U/C Agent-1 asked Dorm if he was interested in joining a crew, to which Dorm responded, "This is what we do." U/C Agent-1 asked whether Dorm had the "tools," and Dorm replied that he has the tools, including a gun all dressed for something like this.

5. On June 12, 2017, Dorm attended a meeting with the ATF CI-1 and U/C Agent-1, which was set up to introduce Dorm to U/C Agent -2 and to allow a face to face discussion of the potential stash house robbery. During the meeting, which is recorded, U/C Agent-2 explained that he moves multiple kilograms of powder cocaine for Mexican suppliers, and he is called every few weeks and told the location of the stash house where he should drive to get the cocaine. U/C Agent-2 then informed Dorm that the location of the stash house changes and that he has seen up to 10 bricks of cocaine, which are typically stored in an oven. Dorm again agreed to participate in the robbery. Dorm asked specific questions on the layout to the Mexican cartel residence and later suggested contingency plans to the ATF-CI.

6. On June 27, 2017, U/C Agent-1 and U/C Agent-2 attempted to set up a face-to-face meeting with Dorm and some of the members of the crew Dorm intended to use during the stash house robbery. Dorm ultimately refused such meeting, questioning why U/C Agent-2 needed to see his crew. However, during his telephone conversation with U/C Agent-1, Dorm identified "Gotti" as someone he expected to participate in the robbery. "Gotti" is known to be Joseph VAUGHT.

7. On July 11, 2017, members of the ATF Wilmington Field Office with the assistance of the ATF CI conducted a controlled purchase of 20 bags (0.40 grams) of heroin from



AUSA 2

United States v. Joseph Vaught – Attachment A

VAUGHT. At 4:20 p.m., in response to calls from the ATF CI, VAUGHT arrived at the ATF Apartment. Once inside, he pulled heroin from his groin. VAUGHT then sat on the couch and exchanged 20 bags of heroin with the ATF CI for $120.00 of ATF funds. The controlled purchase was captured on video and audio. The purchased heroin was field tested and tested positive for heroin.

8. On August 10, 2017, Dorm agreed to meet the ATF CI and U/C Agent-1 to discuss the robbery and brought a subject named "Drizz" to the meeting. "Drizz" later identified as Andre Hall, was picked up by the CI and Dorm at 1107 Grace Street. While the ATF CI was driving Dorm and Hall to the predetermined meeting location, Dorm explained the robbery scenario to Hall, who agreed to participate. Dorm further explained to Hall that "Gotti" (referring to Joseph VAUGHT) was coming on the robbery but that he did not want to meet the U/C Agent. Dorm, Hall, and the ATF CI met with U/C Agent-1. U/C Agent-1 asked Dorm and Hall if they had any questions, and Dorm responded, "No, we're good. I told you we were good from the jump, if I know you're about business then I'm going to be there."

9. On August 29, 2017, the ATF CI called VAUGHT in an attempt to make contact with Dorm about conducting the robbery scenario. VAUGHT advised the ATF CI that he was able and willing to conduct the robbery. ATF provided the ATF CI with a vehicle, which TFO Simpson searched to confirm that no contraband was present. The ATF CI traveled to VAUGHT's residence at 1107 Grace Street in Wilmington, North Carolina. While speaking with VAUGHT about the robbery, the ATF CI observed Rufus Parker arrive and meet with VAUGHT. After meeting with Parker, VAUGHT showed the ATF CI a handgun he had gotten from Parker. VAUGHT then called Sylvester Hooper and explained the robbery to him. Hooper agreed to assist and advised VAUGHT to pick him up in the area of North 4th Street and Taylor Street in Wilmington, North Carolina. Once the ATF CI and VAUGHT arrived, Hooper entered the vehicle and showed the ATF CI that he was armed with a handgun.

10. With both VAUGHT and Hooper as passengers, the ATF CI drove to a predetermined location to meet U/C Agent-1 and U/C Agent-2. During the meeting, the undercover agents ensured that both VAUGHT and Hooper knew that they were there to conduct an armed home invasion of a stash house belonging to a drug trafficking organization. After ensuring that both VAUGHT and Hooper had knowledge of the robbery scenario and giving them the opportunity to back out, the undercover ATF agents invited VAUGHT and Hooper to the storage units across the street, the purported location of the stash house. Once Hooper and VAUGHT arrived at the storage unit in the vehicle operated by the ATF CI, members of the ATF Special Response Team initiated an arrest of Hooper and VAUGHT.
AUSA 3



United States v. Joseph Vaught – Attachment A

11. When the agents moved in for the arrest, they observed VAUGHT jump from the back seat of the vehicle into the driver's seat and attempt to drive towards the agents. Agents were able to disable the vehicle and place VAUGHT and Hooper under arrest. During a search of the CI vehicle, two handguns were located. Under the rear seat, agents located a Diamond Back 9mm handgun with an obliterated serial number. In the front passenger seat, beside where VAUGHT has jumped, agents located a CZ-09 9mm handgun. The ATF CI confirmed that the CZ-09 was the gun VAUGHT had possessed.

12. Agents later executed a search warrant at the residence of Rudy Parker. In the residence, they found a magazine that matched the CZ-09 9mm handgun. This corroborates the ATF CI's observation that VAUGHT had obtained that handgun from Parker earlier in the day.

13. TFO R. Simpson contacted SA S. Varney an ATF Nexus expert, SA Varney stated that both the Diamond Back 9mm and the CZ-09 9mm handgun were manufactured outside the state of North Carolina.

14. Facts contained in this affidavit are of my own personal knowledge as well as facts related to me by other law enforcement officers and official custodians of record.

15. Based on the above information, your affiant has probable cause to believe that (i) on July 11, 2017, Joseph VAUGHT possessed with intent to distribute and did distribute a quantity of heroin, a schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); and (ii) on August 29, 2017, VAUGHT, having been convicted of a crime punishable by imprisonment exceeding one year, knowingly did possess in and affecting commerce, a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

_____ 8/30/17

Signature of Complainant/ Date

Sworn to before me and subscribed in my presence,

August 30, 2017     at     Wilmington, N.C.
Date                        City and State

United States Magistrate Judge



AUSA                                    4